## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**AMY P.,**[1]

      **Plaintiff,**                    **Case No. 2:20-cv-12082**

                                     **Magistrate Judge Norah McCann King**

  **v.**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**


### <u>OPINION AND ORDER</u>

      This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Amy P. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Acting Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

## I.      PROCEDURAL HISTORY

On September 15, 2017, Plaintiff filed her current application for benefits,[3] alleging that she has been disabled since May 23, 2015. R. 105, 121, 232−42. That application was denied initially and upon reconsideration. R. 159−64, 167−69. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 171−72. ALJ Dennis O'Leary ("the ALJ") held a hearing on May 23, 2019, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert. R. 48−91. In a decision dated June 11, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from May 23, 2015, Plaintiff's alleged disability onset date, through December 31, 2017, the date on which Plaintiff was last insured. R. 12−36. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on July 29, 2020. R. 1−7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On September 18, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 2.[4] On that same day, the case was reassigned to the undersigned. ECF No. 3. The matter is ripe for disposition.

---

[3] In a written decision dated May 22, 2015, an ALJ denied an application for benefits filed by Plaintiff in 2013, determining that Plaintiff was not entitled to benefits. R. 122−41. Plaintiff appealed that decision and, on March 20, 2018, United States Magistrate Judge Paul A. Zoss affirmed that administrative decision. 147−55. Plaintiff's current application for benefits alleges that she has been disabled since May 23, 2015, *i.e.,* the day after the date of the prior unfavorable ALJ decision. R. 105, 121, 232−41.

[4] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

II.     **LEGAL STANDARD**

A.      **Standard of Review**

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks

omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal

quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009)

(citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018

WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli

v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported

by substantial evidence, we are bound by those findings, even if we would have decided the

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award

benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.     Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec*., 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination

of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 42 years old on the date on which she was last insured. R. 29. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between May 23, 2015, her alleged disability onset date, and December 31, 2017, her date last insured. R. 17.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: status post aneurysm, fibromyalgia, herniated discs in the cervical and lumbar spine, obesity, depression, and anxiety. *Id.* The ALJ also found that Plaintiff's diagnosed impairments of fibromyalgia, celiac disease, cerebral palsy, restless leg syndrome, and asthma, as well as her alleged Sjogren's syndrome and menstrual cramps, were not severe. R. 17–19.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 20–22.

7

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 22−28. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a medical technologist and laboratory assistant. R. 28.

At step five, and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs−*i.e.*, approximately 34,350 jobs as a call out operator−existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 29−30. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 23, 2015, her alleged disability onset date, through December 31, 2017, her date last insured. R. 30.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 18; *Plaintiff's Reply Brief*, ECF No. 22. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 21.

## IV.    RELEVANT MEDICAL EVIDENCE

On September 20, 2017, Alan Weiss, M.D., Plaintiff's treating physician, completed a four-page, fill-in-the-blank, and check-the-box form entitled "Disability Questionnaire." R. 614−18. Dr. Weiss noted, *inter alia*, neurological symptoms, including sleep disturbance, change in visual acuity, numb or tingling feelings, disequilibrium, frequent headaches, migraines and vertigo, as well as muscle and joint symptoms, including muscular and joint aches/pains, tender

trigger points, a diagnosis of fibromyalgia, TMJ symptoms, piriform muscle syndrome, sciatica, and weakness. R. 615−16. Dr. Weiss explained that Plaintiff's "[f]ibromyalgia has worsened over the years, and she now has joint pain consistent with tendinitis which is being treated w/ Prednisone[.]" R. 617. He also noted that Plaintiff avoids, *inter alia*, fumes and temperature extremes. *Id*.

On September 25, 2017, Dr. Weiss completed a one-page form entitled "Fibromyalgia Trigger Point Chart[,]" on which directed he indicated, as positive trigger points, sixteen of eighteen points on different areas of the body. R. 618. Dr. Weiss also noted that he had treated Plaintiff every two months, most recently, on September 19, 2017, and that Plaintiff's fibromyalgia had begun at age 20. *Id*.

On the same day, Dr. Weiss also completed a three-page fill-in-the-blank and check-the-box form entitled, "Medical Assessment of Ability to Do Work-Related Activities Fibromyalgia." R. 619−21. He diagnosed fibromyalgia with systemic tendinitis, identifying the following symptoms: multiple tender points, non-restorative sleep, fatigue of motor function, muscle weakness, subjective swelling, premenstrual syndrome, frequent headaches, temporomandibular joint dysfunction, numbness and tingling, Sicca symptoms, dysmenorrhea, anxiety, panic attacks, depression, carpal tunnel syndrome, and chronic fatigue syndrome. R. 619. He opined that Plaintiff met the criteria for a diagnosis of fibromyalgia. *Id*. According to Dr. Weiss, Plaintiff could sit, stand, and walk for only one hour. *Id*. She could occasionally (meaning less than one-third of the working day) lift and carry ten pounds, bend, climb stairs, and reach. R. 619−20. She tiff could not grasp or perform fine manipulations with her hands but could push/pull with either hand. R. 620. She could not push or pull with either leg. *Id*. Plaintiff should elevate her legs six inches and, if she had a sedentary job, she should elevate her legs 50% of the

time during an eight-hour working day. *Id*. Dr. Weiss further opined that Plaintiff needed to alternate sitting and standing very 15 to 30 minutes with prolonged sitting. *Id*. She did not need a cane or other assistive device for occasional standing or walking and her impairments were not likely to produce "good days" and "bad days." R. 620−21. Plaintiff was likely to be absent from work about three times a month as a result of her impairments or treatment. R. 621. According to Dr. Weiss, Plaintiff's impairments had lasted or were expected to last at least twelve months. *Id*.

On April 11, 2019, Dr. Weiss completed another one-page "Fibromyalgia Trigger Point Chart[,]" on which he indicated, as positive trigger points, "all points[.]" R. 1057. He noted that he had treated Plaintiff since 2007, most recently on September 19, 2017, and that the onset of Plaintiff's fibromyalgia was "about 1996[.]" *Id*.

On that same day, Dr. Weiss completed another "Medical Assessment of Ability to Do Work-Related Activities." R. 1053−55. Dr. Weiss again diagnosed fibromyalgia and chronic fatigue syndrome, identifying the following symptoms: multiple tender points, non-restorative sleep, fatigue of motor function, morning stiffness, muscle weakness, subjective swelling, frequent headaches, temporomandibular joint dysfunction, numbness and tingling, anxiety, depression, carpal tunnel syndrome, and chronic fatigue syndrome. R. 1053. He opined that Plaintiff could sit, stand, walk for two hours in an eight-hour day could occasionally (meaning less than one-third of the working day) lift and carry ten pounds, bend, climb stairs, and reach. *Id*. According to Dr. Weiss, Plaintiff could grasp, push/pull, and perform fine manipulations with both hands, but could not push or pull with either leg. R. 1054. Dr. Weiss opined that, with prolonged sitting, Plaintiff should elevate her legs so that her knees are straight and, if she had a sedentary job, she should elevate her legs 50% of the time during an eight-hour working day. *Id*. He further opined that, with prolonged sitting, Plaintiff needed to alternate sitting and standing

very 15 to 30 minutes. *Id*. He denied that she needed to a cane or other assistive device or that her impairments wee likely to produce "good days" and "bad days." R. 1054. Dr. Weiss again opined that Plaintiff was likely to be absent from work about three times a month as a result of her impairments or treatment. *Id*. Plaintiff's impairments had lasted or were expected to last at least twelve months. *Id*.

In April 2019, Dr. Weiss also completed a five-page fill-in-the-blank and check-the-box form entitled, "Physical Residual Functional Capacity Questionnaire." R. 1060–64. He had treated Plaintiff every two to three months from 2007 through March 2019 for fibromyalgia and "CFS" (chronic fatigue syndrome). R. 1060. Asked to identify the clinical findings, and laboratory and test results supporting the diagnoses, Dr. Weiss responded: "physical exam consistent w/ fibromyalgia," and severe body pain, fibromyalgia, tendonitis, severe fatigue, and swelling in the feet and right knee. *Id*. Asked to characterize Plaintiff's pain, Dr. Weiss responded: "stabbing, burning pain from fibromyalgia that moves and changes in intensity. R[ight] sided swelling, knees & foot pain that is constant and continuously changing in severity;" he identified as a positive objective sign that Plaintiff's right knee "cannot bend weight bearing"; abnormal gait, sensory loss; tenderness; crepitus; swelling; muscle spasm; muscle atrophy; muscle weakness; impaired appetite or gastritis; and impaired sleep. R. 1060–61. Dr. Weiss also opined that Plaintiff's emotional factors contribute to the severity of her symptoms and functional limitations and that her impairments were reasonably consistent with the symptoms and functional limitations described in his evaluation. R. 1061. Moreover, he opined, Plaintiff's symptoms were severe enough to frequently interfere with her attention and concentration. *Id*. Her prescribed medications, Lyrica, caused intermittent blurred vision, and Zanaflex caused dizziness and fatigue. *Id*. Asked to estimate Plaintiff's functional limitations in a competitive

11

work situation, Dr. Weiss opined that Plaintiff could walk "barely one" city block; continuously

sit for 20 minutes at a time; continuously stand for 15 minutes at a time; sit, stand/walk for a total

of less than two hours in an eight-hour working day; that she needs to walk every 20 minutes for

a total of five minutes during an eight-hour working day; that she would require a job that

permits shifting positions at will from sitting, standing, or walking; and would require daily,

unscheduled, fifteen minute breaks. R. 1062−63. With prolonged sitting, Plaintiff's legs should

be elevated "straight" and that, if she held a sedentary job, she should elevate her legs 50% of the

time during an eight-hour working day. R. 1063. Plaintiff did not need a cane or other assistive

device when occasionally standing or walking. *Id*. She could occasionally lift and carry ten

pounds. *Id*. According to Dr. Weiss, Plaintiff could perform one to two hours of repetitive

reaching and handling and could grasp, turn, twist objects with her right hand 10% of an eight-

hour working day, and 20% of the time with her left hand; she could perform fine manipulations

with the fingers of her right hand 10% of an eight-hour working day, and 20% of the time with

the fingers of her left hand; she could reach (including overhead) 10% of an eight-hour working

day with her right arm, and 20% of the time with her left arm. R. 1063−64. Plaintiff could bend

at the waist 10% of an eight-hour working day and twist at the waist 5% of the time. *Id*.

Plaintiff's impairments were not likely to produce "good days" and "bad days" and she was

likely to be absent from work more than three times a month. R. 1064. Asked to identify any

other limitations that would affect Plaintiff's ability to work at a regular job on a sustained basis,

Dr. Weiss responded, "limited vision – sometimes blurred, avoid temp extremes, dust, fumes[.]"

*Id*. Dr. Weiss stated that these symptoms and limitations had begun in 2007. *Id*.

12

## V.      DISCUSSION

Plaintiff argues, *inter alia*, that the ALJ erred in evaluating Dr. Weiss's opinions. *Plaintiff's Brief*, ECF No. 18, pp. 13−20; *Plaintiff's Reply Brief*, ECF No. 22, pp. 2−6. This Court agrees.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision and the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[5] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical

---

[5] As previously noted, Plaintiff's current claim was filed on September 15, 2017.

sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(2).

The applicable regulations further require the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b).

14

"Specifically, the ALJ must explain how he considered the 'supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how he [or she] considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

At step four of the sequential evaluation process, the ALJ found that Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can perform simple and repetitive tasks. She can perform no work at heights or around heavy machinery (to account for allegations of fatigue and vertigo). She can perform occasional but not frequent fine fingering.

R. 22. In making this determination, the ALJ considered, *inter alia*, Dr. Weiss's assessment of Plaintiff's physical limitations:[6]

> Alan Weiss, M.D. provided an assessment of the claimant's physical functional abilities on September 20, 2017 (Exhibit B6F). She was expected to miss work about three times per month (Id. at 4). She could sit for one hour, stand for one hour, and walk for one hour in an eight-hour day (Id. at 6). She could occasionally lift and carry up to ten pounds. She could not use her hands to grasp or perform find manipulations (Id. at 7). She could not push or pull with the bilateral lower extremities. She needed to alternate positions every fifteen to thirty minutes. She needed to be able to elevate her legs six inches for half the day. While some of the restrictions found were supported by the record, other limitations did not have objective evidence that supported the limitations. This assessment was persuasive to the extent it was consistent with the objective evidence available within the record.

> Alan Weiss, M.D. provided an assessment of the claimant's physical functional abilities on April 11, 2019 (Exhibit B23F). She could sit for two hours, stand for two hours, and walk for two hours (*Id.* at 1). She could occasionally lift and carry up to ten pounds. She could occasionally bend, climb steps, and reach. She was unable to push and pull with the bilateral legs (Id. at 2). However, she could use her

---

[6] The Court does not address the ALJ's consideration of Dr. Weiss's opinions relating to Plaintiff's mental impairments.

bilateral hands for grasping and fine manipulations. She would need to have her legs elevated to where her knees were straight for half of an eight-hour workday. She needed to alternate positions every fifteen to thirty minutes. She was expected to be absent from work about three times a month. While some of the restrictions found were supported by the record, other limitations did not have objective evidence that supported the limitations. This assessment was persuasive to the extent it was consistent with the objective evidence available within the record.

Dr. Weiss provided another assessment of the claimant's physical functioning in April 2019 (Exhibit B26F). She frequently experienced symptoms that interfered with attention and concentration (Id. at 2). She could sit for less than two hours. She could stand and walk for less than two hours. She required having her legs elevated half of the eight-hour workday (Id. at 4). She could occasionally lift and carry up to ten pounds. She could repetitively reach and handle for one to two hours a day. She could use her right hand to grasp turn and twist objects 10% of the day and her left hand 20% of the day (Id. at 5). She could use her fingers for fine manipulations 10% of the day for the right and 20% of the day for the left. She could use her arms to reach 10% of the day on the right and 20% of the day on the left. She could vend at the waist 10% of the day and twist 5% of the day. She was expected to miss work more than three times per month. She had sometimes-blurry vision. She was to avoid temperature extremes, dust, and fumes. This assessment and the assessment from April 11, 2019 were generally similar overall; however, they were inconsistent in places, such as the extent to which the claimant could use her hands. This assessment like the April 11 assessment had some limitations that were supported by the record and other limitations did not have objective evidence that supported the limitations. For these reasons, this assessment was persuasive to the extent it was consistent with the objective evidence available within the record.

R. 27–28.

Plaintiff argues that the ALJ's analysis of these opinions is deficient under the applicable regulations because the ALJ summarily discounted these opinions without adequate reasoning. *Plaintiff's Brief*, ECF No. 18, pp. 13–20; *Plaintiff's Reply Brief*, ECF No. 22, pp. 2–6. According to Plaintiff, the ALJ's explanation for discounting portions of Dr. Weiss's physical functioning opinions, *i.e.*, "[w]hile some of the restrictions found were supported by the record, other limitations did not have objective evidence that supported the limitations. This assessment was persuasive to the extent it was consistent with the objective evidence available within the record[,]" is insufficient because the ALJ failed to articulate which restrictions he accepted and

which he rejected and because the ALJ failed to explain why the ALJ found portions of these opinions unpersuasive. *Plaintiff's Brief*, ECF No. 18, p. 15; *Plaintiff's Reply Brief*, ECF No. 22, pp. 2−4. Plaintiff also challenges, as deficient and speculative, the ALJ's assertions that Plaintiff "appeared to have some relief" from epidural injections and that "surgery could provide additional relief." R. 25; *Plaintiff's Reply Brief*, ECF No. 22, p. 5. Plaintiff also argues that the ALJ erred in rejecting Dr. Weiss's opinions regarding Plaintiff's fibromyalgia-related limitations because they were not supported by "objective evidence." *Plaintiff's Brief*, ECF No. 18, pp. 19−20 (citations omitted).

The Acting Commissioner counters that the ALJ properly considered Dr. Weiss's physical functional abilities under the regulatory framework, arguing that the ALJ relied on Plaintiff's longitudinal treatment history, discussed the relevant medical findings, relied on "prior administrative findings rendered by the four state agency experts[,]" and "discussed Plaintiff's daily activities." *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 21, pp. 9−15. Although she concedes that objective medical testing may not be possible in assessing the severity of fibromyalgia, the Acting Commissioner further argues that the mere diagnosis of fibromyalgia does not automatically entitle a claimant to an award of benefits and that the ALJ's evaluation of Dr. Weiss's opinions was properly based on his consideration of Plaintiff's multiple severe impairments, the objective medical findings, Plaintiff's conservative treatment history, her positive response to medications and epidural injections, her decision not to pursue surgical intervention, her range of daily activities, and the prior administrative findings. *Id.* at 14−15.

The Acting Commissioner's arguments are not well taken. First, it must be noted that the ALJ did not expressly consider the regulatory factors of supportability and consistency when

evaluating the physical functional limitation opinions of Dr. Weiss. It may be that any procedural error in failing to do so may be harmless if the Court can "glean" how the ALJ considered these factors and a "searching review" of the record confirms that the ALJ did not violate the applicable regulation. *See Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (stating that "the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record[,]" but that "[d]espite the ALJ's procedural error, we could affirm if 'a searching review of the record' assures us 'that the substance of the [regulation] was not traversed'") (quoting *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)) (cleaned up). In the present case, however, the Court cannot conclude that the ALJ's failure in this regard is harmless, particularly where the ALJ discounted Dr. Weiss's limitations in Plaintiff's physical functioning as a result of her fibromyalgia.

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p. Under SSR 12-2p, a claimant can establish fibromyalgia as a severe medically determinable impairment by presenting "appropriate medical evidence" that satisfies one of the two sets of criteria for the diagnosis, based on criteria established by the American College of Rheumatology ("ACR"): the 1990 ACR Criteria for the Classification of Fibromyalgia (the "1990 Criteria"),[7] or the 2010 ACR Preliminary Diagnostic Criteria (the

---

[7] Under the 1990 Criteria, an ALJ may find that a person suffers from fibromyalgia if that person has all three of the following: (1) a history of widespread pain in all quadrants of the body that has persisted for at least three months; (2) at least eleven positive tender points bilaterally both above and below the waist on physical examination; and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded. Therefore, it is common in cases involving [fibromyalgia] to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs." *Id.*

"2010 Criteria").[8] *Id.*; *see also Foley v. Barnhart*, 432 F. Supp.2d 465, 475 (M.D. Pa. 2005) ("These tender points are called "trigger points." . . . . All points may not be painful at all times in every person. . . . The pain may vary in intensity according to the time of day, weather, activity level, stress, and sleep patterns.") (citations omitted).

In the case at bar, as set forth above, the ALJ found at step two of the sequential evaluation that Plaintiff's fibromyalgia was severe. R. 17; *see also* R. 18 (stating that "[t]he medical record did confirm that the claimant has the requisite number of tender point findings. There is no evidence that medical doctors have excluded other impairments that may have caused the claimant's symptoms as required in SSR 12-2p" and "[c]onsequently, I find that this impairment does satisfy the requirements set forth by the Social Security Administration needed for the determination that fibromyalgia is a medically determinable impairment"). In addition, as detailed above, Dr. Weiss specifically found, *inter alia*, that Plaintiff had 16 to 18 tender points or trigger points, R. 618, 1057; that Plaintiff's symptoms included, *inter alia*, muscle weakness, subjective swelling, numbness, and tingling, R. 619, 1053; that Plaintiff's fibromyalgia had

---

[8] Under the 2010 Criteria, an ALJ may find that a person suffers from fibromyalgia if that person has all three of the following: (1) a history of widespread pain; (2) "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring condition were excluded[.]" *Id.* Symptoms or signs include "somatic symptoms," including the following: muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms. *Id*. Some co-occurring conditions may include irritable bowel syndrome, depression, anxiety disorder, chronic fatigue syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome. *Id*.

19

worsened over the years, R. 617; and that Plaintiff should, *inter alia*, elevate her legs 50% of the time during an eight-hour work day and should alternate between sitting and standing every 15 to 30 minutes, R. 620 (reflecting his assessment of Plaintiff's "ABILITY TO DO WORK-RELATED ACTIVITIES FIBROMYALGIA"), 1054 (reflecting that the legs should be elevated "so the knees are straight"). The ALJ did not include these limitations in the RFC determination. R. 22. Although the ALJ did not explain why he rejected Dr. Weiss's sit/stand limitation, he explained that he rejected Dr. Weiss's opinion that Plaintiff should elevate her legs "because there was no medical evidence or any clinical findings that support limitations to this extent and the claimant did not even testify to these limitations in her reports of her daily activities or her limitations." R. 25. However, as set forth above, Dr. Weiss expressly noted that Plaintiff has sixteen to eighteen trigger points and suffers from numbness, tingling/neuropathy and swelling. R. 618−19, 1053, 1057. In any event, even if these limitations are construed as based on merely Plaintiff's subjective complaints, "it is error for an ALJ to rely on the lack of objective evidence to reject a treating physician's opinion in a disability case involving a diagnosis of fibromyalgia due to the nature of the disease." *Henderson v. Astrue*, 887 F. Supp. 2d 617, 636 (W.D. Pa. 2012) (stating further that the ALJ "erred by failing to address the unique circumstances presented by a claimant alleging disability based on a diagnosis of fibromyalgia") (citations omitted); *see also Foley*, 432 F. Supp.2d at 475 (noting that the ALJ discounted a physician's assessment of the claimant's condition because "it was not supported by any independent findings and observations" and stating that "[t]he problem with looking for independent findings and observations is that fibromyalgia is a disease which is notable for its lack of objective diagnostic techniques") (cleaned up); *id.* at 476 ("[I]n a disability determination involving fibromyalgia, it is error to require objective findings when the disease itself eludes such measurement.")

(citations omitted). Therefore, even setting aside the sixteen to eighteen trigger points noted by Dr. Weiss and the numbness/neuropathy and swelling identified by him, the Court is not persuaded that any alleged lack of objective medical evidence supports the ALJ's rejection of the limitation of elevating Plaintiff's feet. *See id.*; *cf. Seibert v. Saul*, No. 1:18-CV-10, 2019 WL 4439653, at *8 (M.D. Pa. Aug. 28, 2019), *report and recommendation adopted*, No. 1:18-CV-10, 2019 WL 4420578 (M.D. Pa. Sept. 16, 2019) ("Simply put, it is well-settled that an inadequate discussion of the medical necessity for a disability claimant to elevate his legs for prolonged periods in order to combat edema, venous insufficiency, and neuropathy is generally regarded as a material shortcoming in analysis by an ALJ and compels a remand.") (citations omitted).

Similarly, the Court is not persuaded that the ALJ's other stated reason for rejecting these limitations included in Dr. Weiss's opinions—*i.e.,* that Plaintiff "did not even testify to these limitations in her reports of her daily activities or her limitations[,]" R. 25—provides substantial support for the ALJ's RFC determination. Dr. Weiss identified the limitation of elevating legs 50% of an eight-hour day in the context of Plaintiff's capacity "in terms of day-to-day <u>sustained</u> activity, in a normal, stressful work environment" with "prolonged sitting[.]" R. 619−20 (emphasis in the original), 1053−54 (same). Consistent with that limitation, Plaintiff testified that she sleeps most of the day. R. 60, 65 (replying "[m]ainly sleep" in describing her activities of daily living), 70−71.

Equally unavailing is the Acting Commissioner's contention that the ALJ's properly discounted Dr. Weiss's opined limitation based on the fact that Plaintiff "*appeared* to have *some* relief with injections in her back" and "surgery *could* provide additional relief." *See* R. 25 (emphasis added). As the ALJ acknowledged elsewhere in his decision, the injections provided only "slight relief." R. 23. Moreover, as Plaintiff notes, the ALJ's suggestion that surgery

21

"could" help her is simply rank speculation. *Cf. Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."). Notably, "case law indicates that conservative treatment is appropriate for fibromyalgia and surgery may not be appropriate or required." *Rainey v. Saul*, No. CV 19-1197, 2020 WL 5983070, at *4 (W.D. Pa. Oct. 8, 2020); *see also Wolfe v. Saul*, No. CV 19-5005, 2020 WL 3288384, at *9 n.9 (E.D. Pa. June 18, 2020) ("[C]ourts have held that 'conservative treatment is appropriate for fibromyalgia. Indeed, massage, exercise, anti-inflammatories, trigger-point injections and other approaches may be appropriate treatments for fibromyalgia and that surgery may not be appropriate or required.'") (quoting *Payne v. Berryhill*, 2019 WL 1082488, at *2 (W.D. Pa. Mar. 7, 2019)).

The Court is similarly not persuaded that Plaintiff's activities of daily living sufficiently support the ALJ's rejection of Dr. Weiss's limitations of physical functioning. As an initial matter, the ALJ's reasoning in this regard is inconsistent; he conceded at one point that Plaintiff's ability to drive, shop, and perform household chores "for an extended period was limited[,]" but he later characterized Plaintiff as "fully functional" in her "activities of daily living." R. 25. Moreover, in finding that Plaintiff's activities are "inconsistent with the alleged level of limitation[,]" R. 25, the ALJ overstated the extent of Plaintiff's activities. For example, although the ALJ noted that Plaintiff could drive, she actually testified that she cannot drive more than one-half hour, and that her hips, knees and feet hurt and get stiff. R. 77. In her function report, she stated that she shopped only once per week and for no more than one hour. R. 281. She also explained that, although she tries to do laundry and wash dishes, laundry can

take her hours or days and washing dishes can take her an hour every few days. R. 280, 316. She

also noted that she needs help with her personal care, including washing her back. R. 279, 315.

In short, the Court cannot find that Plaintiff's activities of daily living provide substantial support

for the ALJ's rejection of Dr. Weiss's limitations of physical functioning. *Cf. Blair v. Colvin*,

No. 3:15-CV-1974, 2016 WL 1089223, at *15 (M.D. Pa. Mar. 21, 2016) ("The ALJ's

overstatement of Plaintiff's activities of daily living, without an explanation for the elimination

of the qualifying aspects of Plaintiff's testimony and statements, renders his reliance on her

activities of daily living problematic.").

     Finally, the Acting Commissioner argues that the state agency reviewing physicians'

opinions provide "compelling evidence that contradicted the work-preclusive limitations Dr.

Weiss proposed." *Defendant's Memorandum of Law Pursuant to Local Civil Rule 9.1*, ECF No.

21, p. 13. However, those opinions were "consistent with a light exertional level," R. 26, and

simply cannot serve to otherwise support the ALJ's finding of an RFC for sedentary exertion.

     In short, for all these reasons, the Court is not persuaded that the ALJ sufficiently

explained his reasoning in implicitly rejecting Dr. Weiss's limitations of physical functioning

(particularly the limitations regarding leg elevation and sitting/standing). Nor can the Court

conclude that this failure is harmless in light of the vocational expert's testimony that a limitation

of elevating legs to waist level "would not be compatible with the performance of even sedentary

work." R. 87–88.

     The Court therefore concludes that the decision of the Commissioner must be reversed,

and the matter must be remanded to the Commissioner for further consideration of these issues.[9]

---

[9] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the
Court concludes that the matter must be remanded for further consideration of the opinions of
Dr. Weiss and the RFC determination, the Court does not consider those claims.

## VI.    CONCLUSION

Accordingly, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate *Order* issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  August 22, 2022                                 *s/Norah McCann King*
                                                            NORAH McCANN KING
                                                    UNITED STATES MAGISTRATE JUDGE